# Use of Law Enforcement Assistance Administration Program Grant Funds for Administrative Purposes

Funds originally awarded to states by the Law Enforcement Assistance Administration for programmatic purposes, under Title I of the Omnibus Crime Control and Safe Streets Act of 1968, may be used to supplement exhausted administrative funds.

A lump sum appropriation can be used for any purpose consistent with the purposes of the authorizing statute, and an agency's representation to Congress as to how it proposes to allocate appropriated funds is legally binding on the agency only to the extent its proposed allocation finds its way into the language of the appropriation statute itself.

June 5, 1980

## MEMORANDUM OPINION FOR
## THE DEPUTY ATTORNEY GENERAL

This responds to your request for our opinion on the question whether the states may be permitted to use a portion of certain unexpended federal grant funds in their possession for purposes other than those for which they were originally intended. We conclude that they may.

The funds in question have been awarded to the states over the past several years pursuant to agreements with the Law Enforcement Assistance Administration (LEAA) under Title I of the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. §§ 3701–3796 (1976) (hereafter Crime Control Act).[1] Under the terms of these agreements, certain sums have been awarded to the states for administrative or planning purposes under Part B of the Crime Control Act, 42 U.S.C. §§ 3721–25, and certain sums for programmatic purposes under Parts C and E of that Act, 42 U.S.C. §§ 3731–39, 3751–74. By the end of the present fiscal year funds awarded under Part B for administrative purposes will have been entirely obligated by the states; however, there will remain to be administered and expended over the next two years

---

[1] Funds were awarded by LEAA to the states for FY 1980 in accordance with categories established by the Justice System Improvement Act of 1979, Pub. L. No. 96–157, 93 Stat. 1167 (hereafter 1979 Act). However, this Act was not passed by Congress until after the beginning of the 1980 fiscal year, so that awards which had already been made for FY 1980 were made under authority of the Crime Control Act. Transition provisions in the 1979 Act intended to facilitate the shift to a new award system provided authority for LEAA to award funds already appropriated "in accordance with the provisions of the prior Act . . . ." H.R. Rep. No. 655, 96th Cong., 1st Sess. 80 (1979) (conf. rep.). *See* § 1301 (d), (f), (h) of the 1979 Act, 93 Stat. 1167, 1221.

some $600 million in programmatic funds awarded under Parts C and E.[2] The practical necessity of devoting some portion of these funds to administration has arisen because of Congress' tentative decision to appropriate no new monies for any formula grant awards by LEAA for FY 1981. The question is whether LEAA's agreements with the states can now be modified to permit states to use funds originally awarded for programmatic purposes to supplement their exhausted administrative funds.

The statutory provisions authorizing LEAA to make grants under Parts B, C, and E of the Crime Control Act set no relevant limits on the amount of money which LEAA can lawfully allocate to each Part.[3] In theory, LEAA could, consistent with its authorizing act, enter into agreements with states under which grant funds could be used either for administration and planning *or* for programmatic purposes. There is, therefore, no obstacle in the authorizing statute to using some programmatic funds for administrative purposes.[4]

Nor do LEAA's appropriation statutes constrain it in this regard. LEAA's is a lump sum appropriation, and as such can be used for any purpose consistent with the purposes of the authorizing statute. *See, e.g., In re Newport News Shipbuilding & Drydock Co.,* 55 Comp. Gen. 812, 819–21 (1976). An agency's representation to Congress as to how it proposes to allocate appropriated funds is legally binding on the agency only to the extent that its proposed allocation finds its way into the language of the appropriation statute itself. Nothing in the language of LEAA's appropriations acts for the past three years suggests that funds awarded under Part B for administrative expenses could not be increased by agreement between LEAA and a particular state, or that obligated funds originally earmarked for programmatic purposes could not in the same manner be shifted to administration if necessary.

In sum, we see no bar either in the authorizing statute or the appropriations acts to LEAA's entering into a modification of its grant agreements whereby the states will be permitted to use funds previously designated for programmatic purposes to accomplish necessary administrative tasks.

---

[2] Under § 520 of the Crime Control Act, 42 U.S.C. § 3768, funds appropriated under Title I remain available for obligation until expended. Under the terms of LEAA's agreements with the states, funds not obligated by the states by the end of the third year after their appropriation, revert to LEAA.

[3] Section 205 of the Act provides for a minimum sum to be awarded every state under Part B, with "the remainder of such funds available" allocated among the states in accordance with a formula based on population. 42 U:S.C. 3725. Section 520(a) provides that the sum allocated by LEAA to Part E will be no less than 20 percent of the amount allocated to Part C. 42 U.S.C. § 3768(a). Other than these two provisions, however, there is nothing in this authorizing statute which obligated LEAA to allocate appropriated funds among Parts B, C, and E in any particular manner.

[4] The 1979 Act does set a ceiling on funds to be allocated for administrative purposes, *see* § 401(c)(1), 93 Stat. 1167, 1181. However, since none of the money in question was appropriated under authority of that Act, *see* note 1 *supra,* this ceiling would pose no obstacle to modifying agreements entered into under authority of the Crime Control Act.

Section 8 of the Department of Justice Appropriation Authorization Act for Fiscal Year 1980, Pub. L. No. 96–132, 93 Stat. 1040, 1046–47 (1979), contains a provision requiring each organizational component of the Department of Justice to give 15 days notice to specified congressional committees of any decision to "reprogram" funds in excess of a certain amount. In the case of LEAA, this amount is $500,000. Under the terms of the statute, notification must be given whenever funds are shifted within an agency from one "program" to another, as that term is defined in the Department of Justice's submission to Congress in support of its authorization request. The notification requirement would apply, therefore, when LEAA shifts funds from one line item in its authorization submission to another, even though LEAA's appropriation itself is in a lump sum.[5] While the present situation could perhaps be distinguished from the more typical agency "reprogramming" action, some public action by LEAA will be necessary in any event to permit the states to accomplish the desired shift of programmatic funds. We therefore think that the appropriate congressional committees should be notified of LEAA's intention to take this course of action.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5] This notification requirement is discussed in the committee reports on the Justice Department's appropriation statute for 1980. *See* S. Rep. No. 251, 96th Cong., 1st Sess. 8 (1979); H.R. Rep. No. 247, 96th Cong., 1st Sess. 6 (1979).